IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. |
|---|---|
| v. | 1:22-CR-00018-JPB-CMS-1 |
| CHAD CHRISTOPHER STARK | |

### RULE 12(b)(3)(B) MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE

COMES NOW, the Defendant, CHAD CHRISTOPHER STARK ("Mr. Stark"), by and through counsel, pursuant to Fed. R. Crim. P. 12(b)(3)(B), and files this motion to dismiss the Indictment for its failure to state an offense, specifically failure to allege the proper *mens rea*.

### I. PRELIMINARY STATEMENT

The law relating to the *mens rea* element of the federal threats statute, 18 U.S.C. § 875(c), shifted after *Elonis v. United States*, 575 U.S. 723 (2015). Prior to *Elonis*, courts were allowing convictions under § 875(c) if a "reasonable person" would interpret the questioned communication as a threat. *Elonis* requires that the defendant subjectively intend to threaten another. Count One of the Indictment here does not allege that or make that clear. For this reason it should be dismissed.

## II. FACTS

On January 18, 2022, Mr. Stark was indicted for violating 18 U.S.C. § 875(c). [Doc. 10]. The government charges that Mr. Stark posted a message to Craigslist, entitled "Georgia Patriots it's time to kill [Official A] the Chinese agent - $10,000." (*Id.* at 1). The Indictment then sets forth the following message as having been communicated by Mr. Stark:

> Georgia Patriots it's time for us to take back our state from these Lawless treasonous traitors. It's time to invoke our Second Amendment right it's time to put a bullet in the treasonous Chinese [Official A]. Then we work our way down to [Official B] the local and federal corrupt judges. It's our duty as American Patriots to put an end to the lives of these traitors and take back our country by force we can no longer wait on the corrupt law enforcement in the corrupt courts. If we want our country back we have to exterminate these people.

> One good loyal Patriot deer hunter in camo and a rifle can send a very clear message to these corrupt governors.. militia up Georgia it's time to spill blood. . . . we need to pay a visit to [Official C] and her family as well and put a bullet her behind the ears.

> Let's be very clear to our local law enforcement who have stood down and watch BLM antifa destroy our country and kill our citizens yet you'll step up to stop Patriot supporters you'll enforce face mask and you'll close American businesses???  Remember one thing local law enforcement the key word being local. . . . we will find you oathbreakers and we're going to pay your family to visit your mom your dad your brothers and sisters your children your wife. . . we're going to make examples of traitors to our country. . . death to you and your communist friends.

[Doc. 10 at 2].

In Count One, based upon the above, the government charges a violation of 18 U.S.C. § 875(c), as follows:

> On or about January 5, 2021, in the Northern District of Georgia, the defendant,
>
> **CHAD CHRISTOPHER STARK,**
>
> <u>with intent to communicate a threat to injure another person and with knowledge that the communication would be viewed as a threat to injure another person</u>, knowingly transmitted a communication in interstate and foreign commerce by posting a message on Craigslist, an internet website, containing a threat to injure and kill government officials, including Official A, Official B, and Official C, and others.

[Doc. 10 at 2-3] (emphasis added). It is unclear from this language what intent or *mens rea* the government presented to the grand jury and what it will argue at trial. The charge does not state that Mr. Stark intended to threaten Officials A, B, and C, and others.

## III. ARGUMENT

In *Elonis*, a 7-2 decision with Chief Justice Roberts writing for the majority, the Court held that the government had to prove that Mr. Elonis intended to threaten others. A grand jury had indicted Mr. Elonis based upon a series of violent statements on Facebook about his coworkers, his estranged wife, police officers, a kindergarten class, and an FBI agent. Mr. Elonis moved to dismiss the indictment for failure to allege that he had *intended* to threaten anyone. The district court denied the motion, citing Third Circuit precedent which required only proof that he intentionally made the communication, not that he intended to threaten anyone. *Id*. at 731.

At trial, Mr. Elonis requested a jury instruction that "the government must prove that he *intended* to communicate a true threat." *Elonis*, 575 U.S. at 731 (emphasis added). The district court denied the request. Instead the court instructed:

> A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a *reasonable person* would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.

*Id*. (emphasis added). In its closing argument, the government argued that it was irrelevant whether Elonis intended the postings to be threats. *Id*. at 732. He was convicted of five counts of violating § 875(c).

4

Chief Justice Roberts began by noting that § 875(c) does not express the applicable mental state. *Id*. at 734. However, such an omission did not dispense with the requirement that "wrongdoing must be conscious to be criminal." *Id*. With respect to § 875(c), as with other statutes the Court reviewed, the "presumption of a scienter requirement should apply to *each* of the statutory elements that criminalizes otherwise innocent conduct." *Id*. at 737 (citation omitted) (emphasis original). Applying this to the threats statute, the Court explained:

> The parties agree that a defendant under Section 875(c) must know that he is transmitting a communication. But communicating *something* is not what makes the conduct "wrongful." Here the crucial element separating legal innocence from wrongful conduct is the threatening nature of the communication. . . . The mental state requirement must therefore apply to the fact that the communication contains a threat. . . . Elonis's conviction, however, was premised solely on how his posts would be understood by a reasonable person.

*Id*. at 737 (citations and quotations omitted).

This lesser standard eliminated criminal intent. Premising culpability on how a reasonable person would interpret the communication would eliminate the conventional requirement for criminal conduct - intentional wrongdoing. *Id*. Under these principles, "what Elonis thinks does matter." *Id*. Chief Justice Roberts explained that Section 875(c) would require something akin to the "calculated purveyance" of a threat, whereby Elonis knew the threatening nature of his

5

communication, i.e., he intended to send a threat. *Id.* at 739. Elonis's conviction could not stand.

Based upon these principles, the Court then stated:

> There is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication <u>for the purpose</u> of issuing a threat, or <u>with knowledge that the communication will be viewed</u> as a threat.

*Id.* at 740 (emphasis added). In the Court's view, this standard would eliminate otherwise innocent conduct from coming within the scope of Section 875(c). *Id.* at 736-38 (discussing specific and general intent).

Three months after *Elonis* was decided, the Eleventh Circuit addressed the intent issue under Section 875(c). In *United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015), the Court was forced to revisit its earlier panel decision ruling against Martinez in light of *Elonis. See United States v. Martinez*, 736 F.3d 981 (11th Cir. 2013), vacated *Martinez v. United States*, 135 S.Ct. 2798 (2015). There, Ellisa Martinez moved to dismiss the indictment for failure to allege that she subjectively intended to convey a threat to injure others. *Id.* at 1294-95. The trial court denied the motion. Ms. Martinez pled guilty with a carve-out to appeal the denial of her motion to dismiss. In its earlier panel decision, the Eleventh Circuit rejected Ms. Martinez's argument, holding that the inquiry under § 875(c) is an objective one – specifically, "whether there was sufficient evidence to prove beyond a reasonable doubt that the defendant intentionally made the statement under such

6

circumstances that a reasonable person would construe [it] as a serious expression of an intention to inflict bodily harm." *Id.* at 1295.

In light of *Elonis*, the Court held that the indictment failed to allege an essential element of the charged offense, namely Ms. Martin's *mens rea*. *Id.* at 1295. The indictment alleged:

> On or about November 10, 2010, in Broward County, in the Southern District of Florida, and elsewhere [Martinez] did knowingly transmit in interstate commerce a communication, that is an email form response, to WFTL Radio, which communication contained a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

*Id.* at 1294. Based upon this language, the Court determined that the indictment failed to allege an essential element of a § 875(c) violation because "[i]t alleges only that a reasonable person would regard Martinez's communication as a threat." *Id.* at 1295.

Notably, the Court's earlier panel decision applied that reasonable person standard in rejecting Martinez's arguments. *Martinez*, 736 F.3d at 984. The indictment (see excerpt above), however, did not explicitly use that language. Nevertheless, the indictment's silence on the issue and statement that a "threat" was issued required the Court to infer the reasonable person standard in the absence of a proper expression of Martinez's intent. Because the indictment did <u>not</u> sufficiently allege Ms. Martinez's intent to threaten injury, it was deficient.

7

The *Elonis* majority opinion was criticized by Justice Alito in his partial concurrence and partial dissent. *Elonis*, 575 U.S. at 742. Justice Alito viewed the opinion as failing to give clarity as to what intent is necessary under Section 875(c):

> But the Court refuses to explain what type of intent was necessary. Did the jury need to find that, Elonis has the purpose of conveying a true threat? Was it enough if he *knew* that his words conveyed such a threat? Would *recklessness* suffice? The Court declines to say. Attorneys and judges are left to guess.

*Id.*; *See Martinez,*, 800 F.3d at 1294 ("While the Supreme Court declined to answer the question of the exact mental state required by a defendant, it held negligence is not enough to support a conviction under § 875(c)."). Mr. Stark disagrees.

In writing for the majority, Chief Justice Roberts explained that the mental state requirement in Section 875(c) is satisfied if the defendant transmits the communication "for the purpose of issuing a threat" or "with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at 740. The Supreme Court's has explained that the use of the term "purpose" corresponds with a finding of specific intent. *United States v. Bailey*, 444 U.S. 394, 405 (1980). Thus, it seems straight forward that the intent element of § 875(c) can be satisfied if it is alleged that a person transmits a communication in interstate commerce with the specific intent (i.e., "purpose") of threatening another with injury or death, as Chief Justice Roberts outlines.

But that is not all. Chief Justice Roberts also explained that a person can be guilty of this crime if he transmits a communication "with knowledge" that it will indeed be viewed as a threat. *Id.* at 740. This alternative expression of intent is a rephrasing of the specific intent to threaten – i.e., "for the purpose of issuing a threat" – which Chief Justice Roberts clearly penned. Of course, the transmission of the communication must be done "knowingly," in the sense that it was not done by mistake or accident. However, to require a*lso* that the transmitter have knowledge that the communication *will be* viewed as a threat addresses his subjective intent, particularly when read together with the first phrase.[1] In other words, the person must have the subjective intent to threaten. *See United States v. Harrison*, 2017 WL 3301220 (N.D. Ga. 2017) ("This intent standard was changed by *Elonis*, which held that 875(c) requires a defendant's subjective intent to threaten."). Both defendants in *Elonis* and *Martinez* argued the need to charge and prove he or she subjectively intended to convey a threat to injure others. It is simply no longer about whether a "reasonable person" would view the words as threatening.

Here, the indictment is deficient. It alleges that Mr. Stark made his transmission "with the intent to communicate a threat to injure another person

---

[1] There is no requirement that the person have any intent of following through. All that is required is the knowing and intentional issuance of a threat with the subjective intent to threaten.

9

<u>and</u> with knowledge that the communication would be viewed as a threat to injure another person. . . ." (Doc. 10 at 2). In this Circuit, the use of "and" in an indictment separating elements allows for a conviction based upon the disjunctive; that is either one "or" the other. *United States v. Riley*, 132 F.3d 1254, 1256 n. 4 (11th Cir. 1998) (citing *United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972)); *see also Allen v. United States*, 2016 WL 106551 at * 5 (S.D. Ill. 2016) (unpublished) (charging in conjunctive allows proof in the disjunctive of alternative means).

Taking the *mens rea* language in Count One a phrase at a time, the language "with intent to communicate a threat to injure another person" is not the same as "for the purpose of issuing a threat," *Elonis*, 575 U.S. at 740. Rather, the language employed here is no different than the language used in *Martinez*, which charged the knowing communication of an email *containing* a threat. *Martinez*, 800 F.3d at 1294. The intent must be to threaten, not just to communicate something which a reasonable person could construe as a threat. Count One's language – "with intent to communicate a threat to injure another person" – leave this option wide open. Does the language mean intent to communicate or intent to threaten? This same imprecision, in *Martinez*, led the Eleventh Circuit to conclude that the indictment there "alleged only that a reasonable person would regard Martinez's communication as a threat." *Martinez*, 800 F.3d at 1295. The same defect requires dismissal here.

The second phrase in Count One relating to *mens rea* does not save it. First, it appears as an alternative to the improper standard in the first phrase. This alone requires dismissal. Next, even though the phrase "with knowledge that the communication would be viewed as a threat to injure another person" is closer to the alternative language Chief Justice Roberts outlined in *Elonis*, it does not clearly express that Mr. Stark is charged with having the subjective intent to threaten. This is certainly so in light of the first phrase, which seemingly allows the reasonable person standard to creep in. In fact, the language "would be viewed as a threat" harkens back to the now-defective objective standard pre-*Elonis*: "the defendant intentionally made the statement under such circumstances that a reasonable person *would* construe [it] as a serious expression of an intention to inflict bodily harm." *Martinez*, 800 F.3d at 1295 (quoting and overruling *United States v. Alaboud*, 347 F.3d 1293, 1296-97 (11th Cir. 2003)).

Count One of the Indictment is deficient. *Elonis* and *Martinez* establish that Section 875(c) requires more than the intentional transmission of a communication in interstate commerce which, objectively viewed, contains a threat to injure another. Rather, the law requires that an indictment charge that a defendant subjectively intended to threaten another with injury. The indictment here does not do this. It should be dismissed.

## III. CONCLUSION

WHEREFORE, for all of the above reasons, Mr. Stark respectfully requests that the Court dismiss the Indictment.

This 25th day of March, 2022.

                                       Respectfully Submitted,

                                       */s/ Thomas L. Hawker*
                                       THOMAS L. HAWKER
                                       Georgia Bar No. 338670
                                       Attorney for Chad Christopher Stark

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, NW
Atlanta, Georgia 30303
404-688-7530; F: 404-688-0768
Thomas_Hawker@fd.org